The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any matter or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh, and may their intentions for the court be now stated. God save the United States and this Honorable Court. You may be seated. Mr. Gordon, when you're ready. Good morning, Your Honors. May it please the Court. Page 44 of the Joint Appendix decides this case. Roy Perry's sentence must be vacated, must be remanded, because the District Court treated the sentencing guidelines as mandatory. The law is very clear that that is a Sixth Amendment violation. That is, was the entire purpose of Booker was to make the guidelines advisory. What about the part of the plea agreement that says the defendant can only appeal a sentence in excess of the guideline range? It's not in excess of the guideline range. I counted five instances of the word advisory preceding the word guidelines in the plea agreement, including the paragraph that, I don't have the exact page of it, that talked about the defendant understands that the court is not bound by the guidelines. So Mr. Perry, if we're going to talk about a knowing and intelligent plea, had been counseled that the guidelines were advisory. And indeed, the entire strategy of our sentencing for the defense was to move for a downward variance, because the guidelines were not binding. But the District Court felt that it could not go below the guideline range. And again, I would suggest page 44 says it all. The government recognized Mr. Ethan Anges, who prosecuted the case, is an outstanding attorney. But the court has only really recognized very specific instances in which one can appeal from an appeal waiver of this type. Are you suggesting we ought to add another one? Well, yes. The answer is yes. Second, the court is aware that it didn't- And what would that be? It would be, I think we're getting back to cases like Attar, Morin, that talk about, you know, you're not subjecting yourself to being sentenced at the whim of the District Court. Now, this isn't really a whim, but it's in the ballpark. The judge here is not following the law. In Blick, the court talked about how you have to take each case under a totality of the circumstances. You have to look at everything that happened. And I think it's impossible to read this transcript without concluding that there was a Sixth Amendment violation here. One of the examples that's used in the appeal waiver cases is, you know, you couldn't enforce a plea agreement in the absence of the right to counsel. I mean, the court couldn't say, you know, Ms. Little, you just go sit in the audience and I'm going to sentence your client. I don't need your assistance here. And he gives a within-guideline sentence. And I cannot imagine this court would uphold that Sixth Amendment violation. What part of the Sixth Amendment was violated here? And your hypothetical obviously would be because of the right to counsel. In this case, what was the Sixth Amendment violation? The Sixth Amendment violation was treating the guidelines as mandatory. That alone? That alone. And that alone is sufficient to vacate the sentence. There are a number of cases from this court that say that. The test is, did the judge treat the guidelines as mandatory? In the Mendoza case, the judge said, I cannot give a downward departure or a variance unless I find a reason to do so. And if I don't, then I am obligated to impose a guideline sentence. Well, the judge here didn't say he was obligated, but he said that given the case law and the sentencing guidelines, I have to sentence him to the low end of the guidelines of 151 months. And I think there's no difference between saying you're obligated and that you have to. And, again, to return to – What if you had a criminal history where you had some past history of very vile crimes, conduct, and the court says, based on your past history, I have to give you this. Does that mean that the court is saying, I'm guided solely by your past history and therefore I – or is it saying basically that I have to, in a sense, if I give proper weight to your past, I have to in a sense of the balance of reasoning? Well, yes. If the court is talking about given the weight of your criminal history, what the court has to do is find a sentence that is sufficient but not greater than necessary. So given your past history, to make this sentence sufficient – But in the quote, the district court said, given the guidelines and the law. Right. So what aspect – how is that different than given your past history? Given the guidelines, which encompasses 3553, danger, all those type things, given all that and the law, which under the law of the Fourth Circuit, we presume that a guideline sentence is reasonable, don't we? You do. Well, then, given that, the guidelines and the law of this circuit, why is it not the same thing saying, I have to give you this sentence? This court has said the guidelines are presentably reasonable. This court has said that Congress wants child pornography cases treated seriously. This court has never said that that obligates the district court to impose a within-guidelines sentence. This court could not say that. Do you think the district court had to give the enhancements in this case that it gave? Do I think it did? Was it required, the enhancements in terms of, you know, the computer, the multiple images? Are they required to be given? We did not object. So it was our position that – You have no objection to that being required to give enhancements. Right. It doesn't mean we agree with the enhancements. But isn't that sort of an irony? You're required to give the enhancements, which are based on sentencing factors and markers. But then when you say that, given those guidelines now, I have to give you this sentence, isn't that a little counterintuitive in terms of sentencing? Well, in the face of a request for a variance, which we gave, right, for the court to say, I have to impose a bottom-of-the-guidelines sentence, I think that is treating the guidelines as mandatory, particularly when the government, recognizing that we were headed here, based on what the court had been saying, tried – Ms. Triethanages is an excellent lawyer, said, let me just make sure that I'm understanding that the court's denying the variance for these following reasons. And he sort of ran down those aggravating factors. And that's why you're giving them 151 months. Isn't that correct, Your Honor? And the judge said, no, I think a 120-month sentence would be sufficient. So the court did not impose a sentence that it believed was sufficient but not greater than necessary. It imposed the sentence it felt it had to impose for whatever reason, because it felt this court would reverse it for whatever reason. Judge Boyle, in this case, treated the guidelines as mandatory and felt he could not vary. And he could vary. He has the authority to vary. Whether this court upholds that variance as reasonable is something for this court to be concerned about and to consider. A judge is not to make a presumption that the sentencing guidelines are reasonable. That's not the same standard. It is a sentence sufficient but not greater than necessary. And we have the court on record here saying it thought 120 months. In this case, there was no minimum, mandatory minimum, correct? That is correct. That's what was said at the sentencing hearing. The pre-sentence report said that I believe it was a 5 to 20. The mandatory minimum was 5 years. But at the sentencing hearing, somebody, and I can't remember who, came up, there's no minimum here, right? So what cabins the authority of the district court to vary downward? This court has made it clear that the farther one deviates from the guideline range, the better the explanation has to be. So you have to give a good explanation. Well, the answer is nothing really. The answer is nothing really cabins it, right? Until we tell the court it went too far. That's right. That's correct. That's right. And you even do that, though, under a deferential abuse of discretion standard because you recognize that it is the judge in the district courtroom who is observing the defendant who is, you know, right there, the person in front of him and not dealing with the cold record that this court deals with. And so for that reason alone, I think this court has to remand the case. I would respectfully submit. There really wasn't much discussion of the other 3553A factors. We really never had a chance to sort of make our pitch. We filed a sentencing memo, but the discussion in the courtroom was dominated by discussion of the guidelines. That was the only factor that seemed to be at play here as far as the court was concerned. And, again, for that reason as well, it's a procedural error. Treating the guidelines as mandatory is one of the examples this court uses all the time as a procedural error coming from Gall. Was it prejudicial? Yes, it was prejudicial because we know that he got more time than the judge would otherwise have given him. Was the waiver knowing and intelligent? You're not arguing that the waiver was not a valid waiver in and of itself? I mean, it's contracting the parties. Correct, but Mr. Perry did not receive the benefit of his bargain. But not because of the government. The government didn't breach his obligation. And that is the normal inquiry for this court is what did the government do? You know, was it knowing and intelligent on the defendant's part, and did the government play fairly? That's not at issue here. The government played fairly, right? The waiver was valid, and the sentence was within the advisory guideline range, correct? That is correct, but the plea agreement talked about the guidelines being advisory. And that's, I would argue that if before pleading he had been told, you're going to get a within guideline sentence, that's it, then maybe you'd have a knowing waiver there. But obviously the filing of the ver- Before pleading, before and during and after signing the plea agreement, prior to the sentencing, he was told that nobody can assure him of what his sentence will be. Not the government, not you. Just as the plea agreement says, the court is not bound by the plea agreement. And that, you know, you hope for a variance, you're going to argue for a variance, but nobody can guarantee it. That's what the plea agreement says, too. That's what the plea agreement says, but then what happened at the sentencing hearing was that the court treated the guidelines as mandatory, which I think is the focus. I think that's the real focus. It's not a breach of the plea agreement case per se. It is the way the court sentenced him. And again, to return to what Judge Wynn asked, yes, I would say treating the guidelines as mandatory is an exception, should be an exception. It's a bizarre case in the instance. You don't maintain Judge Boyle did not know these guidelines were not mandatory. You obviously don't maintain that because you pointed out at trial that he had been a similar defendant ten years. So he knew they weren't mandatory, and yet he chose to state it in this particular case as though it was mandatory. I don't follow that. His language does seem to indicate that he's viewing this particular case as mandatory, and he seems to articulate he wants us to reverse it. It does indeed. In fact, do you want to? Why would he want us to reverse it? Why did he just do it the first time? I have speculation as to what happened, but it's only speculation, and so I don't think it would be unless the court is interested in my speculation. I won't offer it. We'll do it without that. Thank you. Okay. All right. But again, and Judge Stacker, as I'd understood it, by the way, the court initially deferred ruling on the government's motion to dismiss the appeal and then subsequently issued an order denying the motion. So I don't know that that is even in play anymore. It's up for you to decide. But thank you. I'll reserve the rest of my time. Thank you. Ms. May Parker. Good morning, Your Honors. May it please the Court. My name is Jennifer May Parker, and I represent the United States. After careful review of this record, we're compelled to the conclusion that the district court did not believe that the guidelines were mandatory. He said it, but he basically said it. I agree. He probably didn't believe it. I wouldn't think for one moment Judge Boyle did not know these guidelines are mandatory. And, in fact, the record bears that out. But he says it in this case. He even goes so far as to say he thinks a 120-year sentence would be the appropriate one to give here, but he just feels like he has to give this 151-month sentence. And I agree that that is in the record and that it does present a problem. I think the way to resolve the problem. Nobody asked us to reverse it. Yes, he did. What was that about? He did. Why? I don't consider myself qualified to speak to this court as to. I don't think you're qualified to speak to Judge Boyle on that. But you're probably more qualified than I am. He felt this is a case that the defendant should get a lesser sentence, but he's going to give the higher one, and he hopes the appellate court will reverse him so he can then give the lower one when he could have given the lower one the first time. I don't get that. Your Honor, all we can do as litigants, we walk a very fine line in the court, and that is a line between rigorous litigation and deferential respect to the court. Given that, and we can appreciate that delicate balance and sensitivity, counsel, then why shouldn't we just oblige the district court to say, you do have the right to sentence based on what you found to be the appropriate sentence, 120 months, period. Send it back. Well, the first thing I would say is there's a plea agreement here, and the plea agreement was valid and knowing. The plea agreement, in the plea agreement, the defendant waived his right to appeal any sentence for whatever reason. Right. And you do not have a situation here where there is a breach of the plea agreement. The defendant got the sentence within the guideline range. It was a sentence that he should have been aware of, meaning that it was not something unexpected to him. So for that reason . . . If we find that judge, if we conclude that Judge Moore treated this particular case as mandatory, and as your opponent, as the lawyer on the other side has said, the guidelines, the plea agreement addressed advisory guidelines. It's an interesting distinction, but it seemed to have some bite to it that when you plead to advisory guidelines, and yet the judge treated it as a mandatory one, is there truly a meeting of the minds for a plea agreement, or is there a knowing involuntary waiver when you have that kind of convergence of what goes on in court? I believe that the answer comes down to whether you truly believe that Judge Boyle did not know that the guidelines were advisory. I think I agree with you. I don't believe one moment Judge Boyle does not know the law on this. I just don't understand why he treated this particular one. It doesn't look like he's treated it as mandatory. When you first stood up, you said the record compels us to the conclusion that he didn't treat it as mandatory. Where in the record are we compelled to that conclusion? That he did not believe that the guidelines were mandatory. That he did not believe. Yes. Where? I will first direct your attention to page 44. I'm sorry. To page 42. Oh, okay. Where the court begins to discuss the history of the guidelines. This court has been on the bench for 32 years, so he clearly has lived through pre-guidelines, guidelines as mandatory, and now guidelines as advisory. And you can see in his discussion from pages 42 through 43 that he's very much aware of that history. He talks about it. He talks about Mistretta. He talks about Booker. I live in a Booker world. When I came into practice, Booker is familiar to me. Judge Boyle lived in a world before the guidelines, so he talks about Mistretta. So I think the transcript here makes it clear that the court is very much aware of the history of the guidelines, so it's very difficult taking that to say that he was not aware that the guidelines were in place at that point. Well, given that, and that's a fair reading perhaps, but then how do you explain his describing his actions if he gave the 120 months he would be defiant? I think, well, two answers. Number one, I think that when he was talking about being defiant, he was really talking about the specific offense characteristics that he had to calculate in order to calculate the guidelines range. But there is some evidence in the record that he does continue to harbor some resistance to the guidelines as calculated. So I think the second answer is he was clearly struggling with something, and what he was struggling with, I really cannot explain why the struggle took him to the place where he felt like he couldn't vary. I know that he knows that he could vary. In fact, it was told to him that he could and that he had, in fact, done it on a prior occasion. But on this occasion, he struggled with doing that. But a struggle with doing that, with varying, does not amount to a court thinking that the guidelines are mandatory. So I think the record here bears out both of those things, that he's struggling. He's clearly struggling with something. I don't know that I'm qualified to really untangle all that he's struggling with. He does talk about living in a pre-guideline world and then moving into an advisory world and feeling somewhat contained. He really appears on page 43. His struggle seems primarily with the nature of the child pornography enhancements and statutes. I agree. It appears that that's part of the struggle. It even says on pages 41 and 42 that he sentenced a defendant several years prior that was perhaps even more egregious than this defendant, and he sentenced that defendant to 151 months. Yes. So he is struggling with things like disparity. He's struggling with the fact that the guidelines, even though advisory, he seemed contained, and specifically with the statute. Why it ended up the way it is, I don't know. I really don't think I'm qualified to explain it all. I think that's something that this court will ultimately wrestle with in terms of what to do here. So that's why I started out by saying, in answer to Judge Gregory's question, how could we not send it back? Well, that's what the appellate waiver is about. The appellate waiver would be a way of saying, okay, the defendant waived his right to appeal. He certainly anticipated a within-guideline sentence. He could appeal an outside-guideline sentence. He didn't get that, and that his appeal was knowing and voluntary. So he did get the benefit of his bargain because he got a within-guideline sentence based upon the plea agreement. Yes, absolutely. Not only that. He was initially indicted with 11 counts. Two through 11 were dismissed in lieu of this one count that he pled to in the plea agreement. So I believe he did get the benefit of his bargain here. So I acknowledge that. Yes. You made a motion to dismiss this. We did. And did the court deny that motion? That's correct. That was on the basis of the plea waiver. Yes. And I'm looking at the brief, which you didn't write, but I'm looking at it, and there are two pages of arguments here. And the last sentence says, if, however, this court denies the motion to dismiss and believes, after reviewing the record, that the district court was genuinely mistaken about its authority in exercise of sentence discretion, the government defers to the district court's wishes to have this court find that it erred. Yes, and we stand by that today, recognizing that this is a pretty easy thing to do. I mean, there are legal arguments we could rest upon, but sometimes you get a case where I don't know what the district court is asking on this. He asked us to reverse it and send it back to him, and I don't know what he means by it, but I know enough to say send it back to him. And if he feels like he wants to give this same sentence, he can simply give the factors and articulate those factors and give the same sentence. And rather than, you know, it's almost there's a point in time where you can't play with these kind of cases. Here's a man standing before the judge about to get a sentence. There's a big difference between the type of sentences that the sentence he gives and the ones he thinks he can give. And we just need to be more deliberate in the way we deal with it. And I don't think it should be just sent up here so we can send it back to you to go back and do its job. But, again, maybe Judge Boyle didn't articulate the full reason why he felt compelled to it. I sure would like to hear it because, as I said, I just don't believe for one moment Judge Boyle does not know what he's doing. He's a very, very smart judge. But there's something going on here, but I don't know if we want to get in the middle of it. We can simply give him this case back and say, okay, Judge, go through the factors like you know you're supposed to do and give the sentence that you think is appropriate in this case. And, Judge? Why is that not reasonable? It seems like you almost concede that in the end of the sentence. I realize it's a difficult case because, as you say, you give deference and you want to make sure that you don't offend judges because you have to go before these judges, particularly the trial judges, quite often. But he asked us to do it. And if you think you have the basis for getting 151 or a sentence there that may be outside the guidelines, you can produce the factors to do so. And we shouldn't be up here dealing with a case like this, I think. And, Judge, the reason why we said what we said in the brief is because we realize that that's something that you ultimately will have to wrestle with. We do take the position. We're going to not wrestle with it if we send it back to the judge. We're trying not to wrestle with it. I understand your point, but you said if we denied a motion, we did deny it. You did deny the motion. The motion being denied on the plea waiver, we're squarely looking at this, and as Judge Thacker has pointed out, and I know you see this too, it looks like Judge Boyle is saying this thing is mandatory. And he asked us to reverse it. You know, because it's almost like he's deliberately making an error so we can send it back to him. You're having a hard time defending it, but sometimes there are things you just can't defend. And that's, I think that I should make my position clear. If the court believes, and as we said in the brief, if the court believes that Judge Boyle clearly harbored some misunderstanding about his authority and the status of the guidelines, then you must do what you believe is the correct thing, and we will step out of the way. Because we're not sure we believe he harbored some misunderstanding. That's the part I'm probably going, what I believe he did is he did it. Why he did it, I don't know, but he did it. He said basically this is what I got to do, and that's not the state of the law. And he knew that. Then he asked to be reversed. So if you commit an error and say reverse, but I don't know what's gained by it, because all we're doing is go back and do what you should have done in the first instance. That's the part I'm missing. What was the purpose of it? And that is not something that I am prepared nor am I qualified to explain that to the court. I don't think anybody is in this room. Thank you. So unless there are any further questions, I will rest on our brief. I just have a question. You would agree, Ms. May Parker, that it is a little strange in enhancements, in cases where you enhance someone for using a computer in cases like this. I mean, that really is the nature of the crime, isn't it? Yes, but Congress. I agree. Congress, I know, but it makes no sense. It's like enhancing someone in a DUI because they used a car. Well, I mean, but in bank robbery cases, for example, you start with a base offense level. Then there are two levels because it's a bank. There are certain levels because of the amount of money taken. So it's not as removed from the concept of the guidelines to start with a base offense level and then have specific offense levels for certain characteristics. So I'm not sure. I know. The bank is different. But the whole idea is you're sitting down. This is not condoning. The crime is looking at images of child pornography based on a computer. That's the crime. And then you further enhance them as, oh, well, they used a computer. His crime was receipt of child pornography, right? Yes, it was receipt of child pornography. Well, how do you normally receive it? Isn't it more like trading? I mean, in normal cases, I guess. Well, we didn't always have computers. I mean, child pornography existed before computers, but I get the point that you're making. Some of the art go way back in the Renaissance. I mean, I suppose if you want to take it that far. I mean, but it is a little counterintuitive, isn't it? Well, I think that it will be an enhancement. It applies to all defendants who receive and possess child pornography in that way. Redundant, maybe. And then the images, like some of them are thumbnail. I mean, you can't even count the ones where people couldn't even look. You can't even see what it is. But you count it as one, two, three, four, five, six. I mean, some of them are strange, aren't they? The enhancements. In terms of the images, I mean, the guidelines do have certain enhancements depending on the number of images. So I don't, and remembering that victims are usually attached to the images, so it's not so much an image. It's about what's depicted in the image. And so I think that what the guidelines were trying to capture is the victimization of children by virtue of them being in an image. Oh, yeah, well, in the full circuit. It doesn't have to be a child. It could be a drawing. Well, if all that there were in this case were just drawings, we wouldn't be here. He wouldn't be prosecuted for that. There were 69 videos of actual children. Yes, and they were longer than the normal video. I'm talking about the enhancements would apply, would they not, even if they weren't real children, would they? They were images? Well, it wouldn't be a crime. I don't think, I mean, part of this is with child pornography, it has to be real people. So I don't think you would get child pornography for drawings. Oh, really? I don't think so. I'll send you a copy of one of our, I just sent it in the case, but I'll show you one where they were just drawn images. I think it can be included in what you have, but if that's all you have. And the law on proving real children changed sort of late in the game, right? Yes, it changed. The problem there is you might have drawn a real person there. If you've got an artist standing up there drawing a naked child, you've got a problem. Absolutely. But you'd have to prove that it's a real child. You'd have to prove that still. If you're standing there and you're drawing them, you've got a problem. Yeah. Thank you. So thank you, and I'll rest on my break. All right. Mr. Gordon, do you have some time if you think you need it? Just very briefly, Your Honor, and I'm going to be very careful to keep my foot out of my mouth here. Let's see how you can backtrack over what I think you've already kind of gone to. Okay. Once again, Judge Wynne, I couldn't say it more eloquently. I couldn't make the case more eloquently than you made it. I didn't get what I just said at all. Yeah, I think you did. No, he didn't get what he said when he came up. Yeah. Now, go ahead. Counsel, argue the case as Judge Wynne would say. Argue the case the way you want. I would like to say a good word about Judge Boyle. I don't want the Court to think that I'm up here criticizing him. He is an excellent. We know Judge Boyle personally. Judge Boyle is a fine judge. He's a wonderful judge. There's nothing being held personally against him. You don't need to go there with that. All right. And he reads people better than anyone I've ever met in my life. And for him to have sized up Mr. Perry and said, I think 120 months is a fair sentence here, but I can't give it, the only conclusion that can be drawn for whatever reason, fear that this Court will diverse him, whatever, he treated the guidelines as mandatory. And on that basis, it has to go back. Thank you. All right. We'll come down and greet counsel and then proceed to the next case.
judges: Roger L. Gregory, James A. Wynn, Jr., Stephanie D. Thacker